IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES TALBERT,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 12-6401 |
| | : | |
| **MHM CORRECTIONAL SERVICES,** | : | |
| **INC.,** | : | |
| **Defendant** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                                         June 19, 2014

Mr. Charles Talbert filed this action pursuant to 42 U.S.C. § 1983 against fifty-one defendants alleging violations of his constitutional rights during his incarceration at the Philadelphia Industrial Correctional Center.  MHM Correctional Services is the only remaining defendant, and has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The plaintiff has not responded and the time to do so has expired.  For the following reasons, I will grant the motion and enter judgment on behalf of the defendant and against the plaintiff.

## I.  BACKGROUND

Mr. Talbert filed his complaint on December 5, 2012, yet neither served the defendant itself nor its co-defendant employees.  Nevertheless, counsel entered their appearance on behalf of the defendant when it received discovery requests from the plaintiff.  The individual co-defendants who worked for Defendant MHM were dismissed from this action because the plaintiff failed to serve them pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  See Document #68.

Mr. Talbert alleges that Defendant MHM and its co-defendant employees violated his rights provided for by the First and Fourteenth Amendments of the United States Constitution, when they refused to provide him with one-on-one counseling. Because of that refusal, the symptoms from his post-traumatic syndrome allegedly worsened. Mr. Talbert was incarcerated in the Philadelphia Prison System during all times relevant to this action.

## II.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party opposing summary judgment "cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence

or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. FED. R. CIV. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

### III. DISCUSSION

Mr. Talbert has brought this action against Defendant MHM pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights. Under 42 U.S.C. § 1983, a private party may recover in an action against any person acting under the color of state law who deprives the party of his or her constitutional rights. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not by itself confer substantive rights, but instead provides a remedy for redress when a constitutionally protected right has been violated. Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985). Therefore, in order to succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the

Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

In his complaint, Mr. Talbert alleges that

> "[each of the three co-defendant employees of Defendant MHM] violated my First Amendment rights by trying to abridge my freedom of speech by denying me one-on-one counselling for my 'post-traumatic stress disorder,' and insisted that I only take medication without them ever considering that I might relieve these serious mental health issues by talking with somebody, instead of just taking medication that leaves bad side effects, and also makes me feel weird."

See Compl. ¶ 431.  Mr. Talbert explained that because of his colostomy bag he was constantly ridiculed by prison officials and inmates "which put more mental strain" on him, and through his entire incarceration he sought "counseling because talking about [his] problems to someone who would listen would always make [him] feel better." Id. at ¶ 432.  He insisted that "medication only" never worked because "prison officials and inmates were always there to knock down [his] self-esteem." Id.  Mr. Talbert felt that if he would have "been able to just exercise [his] First Amendment [rights] to mental health social workers," "maybe they would [have] been able to build [him] up to where words wouldn't [have] been able to penetrate as hard as they did without [him] being able to talk with social workers who [are] legally obligated to do so." Id.

Mr. Talbert also characterizes the conduct of these defendants as violating his Fourteenth Amendment rights because it was "inadequate medical care towards [his] health." See Compl. ¶ 437.  He insists that because of these deprivations of his rights by the three co-defendants and Defendant MHM, his "post- traumatic stress disorder became

4

worse to where [he] began to hear voices telling [him] '[he's] helpless' and all types of other things." Id. at ¶ 438.

Initially, I note that the three individual co-defendants alleged to have committed the constitutional violations have been dismissed as defendants in this action. I also note, however, that even if they were still defendants, Defendant MHM could not be held responsible for their acts under a theory of *respondeat superior* or vicarious liability. See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). Thus, to succeed on a Section 1983 action against a corporation acting under color of state law,[1] a plaintiff must prove that: (l) he suffered a deprivation of a federal right; (2) as a result of either an express policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the corporation; which (3) was the proximate cause of his injury. Monell, 436 U.S. at 690-691; see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991); Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).

Mr. Talbert's allegation that the MHM employees violated his First Amendment rights when they tried to abridge his freedom of speech by denying him one-on-one counseling is meritless. There is no federally protected right to receive one-on-one counseling. Thus, Mr. Talbert is unable to satisfy the first element of the Monell test, and this claim must fail.

---

[1] In this case, a private corporation, like MHM Correctional Services, can be liable when it is alleged to be acting under color of state law. See Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-584 (3d Cir. 2003).

5

Next, I note that because Mr. Talbert was a convicted prisoner during his incarceration at the Philadelphia Industrial Correctional Center, his claim of a violation of his Fourteenth Amendment rights is more appropriately viewed as a violation of his Eighth Amendment rights. A convicted prisoner's claim of a denial of medical care is categorized as an Eighth Amendment claim. Helling v. McKinney, 509 U.S. 25, 31 (1993) (the treatment that convicted prisoners receive and the conditions of their confinement are subject to scrutiny under the Eighth Amendment). Regarding medical needs in the prison context, the Eighth Amendment proscribes "[o]nly unnecessary and wanton infliction of pain or deliberate indifference to the serious medical needs of prisoners." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Estelle v. Gamble, 429 U.S. 97, 106 (1976); DeFranco v. Wolfe, 387 F.App'x. 147 (3d Cir. 2010). The Third Circuit has interpreted this to mean that there are two prongs to the inquiry: (1) deliberate indifference on the part of prison officials;[2] and (2) the prisoner's medical needs are serious.[3] Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d

---

[2] Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." Estelle, 429 U.S. at 105. It is more than mere negligence or medical malpractice without some more culpable state of mind. Id. at 106; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.1987). It requires "obduracy and wantonness ... [,] which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." Rouse, 182 F.3d at 197. Deliberate indifference is a subjective inquiry, while risk of harm is evaluated objectively. Atkinson v. Taylor, 316 F.3d 257, 262 (3d Cir. 2003). Moreover, the standard is a "stringent standard of fault requiring proof that a [state official] disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997).

[3] The Third Circuit has also described what constitutes a serious medical need. "A medical need is 'serious,' in satisfaction of the second prong of the Estelle test, if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347. The Third

Cir.1987); <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir.1999). A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir. 1990).

Here, Mr. Talbert satisfies the first element of the <u>Monell</u> test because he is claiming the deprivation of a federally protected right, i.e., adequate care given to incarcerated convicted prisoners. The second element of the test, however, is not as easily satisfied. In fact, a careful review of the relevant evidence reveals that there are no facts to establish the existence of any practice, policy, and/or custom attributable to Defendant MHM that resulted in a violation of Mr. Talbert's constitutional rights.

The complaint illustrates three incidents when Mr. Talbert met with the three MHM social workers who were dismissed from this action. On August 18, 2012, Mr. Talbert met with Licensed Social Worker Sheryl Fields in response to a sick-call slip submitted on the previous day. <u>See</u> Document #74-3, Exh. A. The sick-call slip indicated that Mr. Talbert had been suffering with mental health symptoms, and believed he needed counseling and "probably some medication." <u>Id.</u> at Exh. B. Ms. Fields's notes reflect that Mr. Talbert told Ms. Fields that he had several lawsuits and did not really want to go back on his medications. Accordingly, no medications were ordered. <u>Id.</u> at Exh. A. Ms. Fields also noted that, at the time of that meeting, Mr. Talbert was scheduled to be seen once a month by mental health caregivers, but he wanted to be seen more frequently. <u>Id.</u>

---

Circuit also added that a serious medical need is one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." <u>Atkinson</u>, 316 F.3d at 272-73.

On August 23, 2012, Mr. Talbert was seen by Licensed Social Worker Mark Rothschild in response to an emergency referral. See Document #74-3, Exh. C. Mr. Rothschild's notes from that appointment reveal that Mr. Talbert reported that he had been recently re-incarcerated on August 9, 2012 and was having problems with a corrections officer. Id. Mr. Talbert told Mr. Rothschild that he was not on any psychiatric medication, and continued to say to Mr. Rothschild that he was not suicidal and would not harm himself. Mr. Rothschild stressed to Mr. Talbert that Defendant MHM was not responsible for custody issues or conflicts with correctional officers. Id. Mr. Rothschild warned Mr. Talbert that if he were to continue telling the correctional staff that he was suicidal just to get an emergency referral,[4] he would face disciplinary ramifications, including being written up for abuse of mental health services. Id. The notes also reflect that the plaintiff was referred to security, and that no acute treatment was needed.

I note that a suicide risk evaluation was also completed during the appointment with Mr. Rothschild because Mr. Talbert had claimed that he was suicidal and that statement generated an emergency referral. See Document #74-3, Exh. D. The evaluation, however, reflects that Mr. Talbert was not suicidal.

On September 8, 2012, Mr. Talbert had a follow-up visit with Ms. Fields. This time, Mr. Talbert indicated that he needed medication "to make the voices go away."

---

[4] A suicide risk evaluation dated January 16, 2012, indicates that Mr. Talbert admitted that he had "made the false statement that he wanted to kill himself in order to be seen by mental health so that his complaints can be documented." See Document #74-3, Exh. H.

8

Ms. Fields' notes disclose that Mr. Talbert did not appear to be a danger to himself or others, and that no acute treatment needs were identified.  See Document #74-3, Exh. E.

On September 17, 2012, Mr. Talbert was seen by Licensed Social Worker Michael Roche again on an Emergency Referral basis.  See Document #74-3, Exh. F.  Mr. Roche's notes indicate that Mr. Talbert expressed he was suicidal and threatened to employ "any way possible" including tampering with his colostomy bag.  Mr. Roche indicated that on September 15, 2012, Mr. Talbert had seen a physician whose name is indecipherable, and the physician determined that Mr. Talbert was not suicidal at that time.  The notes also showed that Mr. Talbert had not been prescribed psychiatric medications.  Mr. Talbert was held for further evaluation.  Id.  Mr. Talbert was then voluntarily committed to Pennsylvania Health Services Wing on September 17, 2012.  See Document #74-3, Exh. G.

The record also reflects that Mr. Talbert admitted on multiple occasions that he did not need mental health treatment but threatened suicide or requested to be seen in order to have other needs or complaints addressed and documented swiftly.  See Document #74-3, Exh's H and I.  The record also reflects that Mr. Talbert often declined his medications.  See Document #74-3, Exh's A, G, and I.  For example, on a progress note dated April 28, 2012, Social Worker Christine Milliken wrote that Mr. Talbert said that he had not taken his Zoloft, Haldol, or Cogentin medications for months because he felt mentally stable.  Id. at Exh. I.  He also said that he had requested to have these psychiatric medications discontinued several times but no changes had been made.  Id. Other times, he declined

being prescribed medications, but would later request medication. See Document #74-3, Exh's B and E.

A psychiatric progress note indicates that on June 5, 2013, Mr. Talbert told a nurse practitioner whose signature is indecipherable that he expected to be released from prison on July 3, 2013, and that he was off his medication, but planned to go to "Northwestern" when he is released. See Document #74-3, Exh. J. The note shows a diagnosis of "mood disorder, not otherwise specified; a personality disorder, not otherwise specified; gastro-esophageal reflux disorder; and incarceration." Id. The note also indicates that Mr. Talbert became more irritable when he was told that the prison physicians did not prescribe medication for stress, or medication that works immediately for feeling anxious and stressed. In fact, the note specified that no medication was indicated at this time. Id. A behavioral health social work progress note dated June 15, 2013 indicates that Mr. Talbert was dismissive and threatening, and that he became angry that he was not prescribed medication. Id.

Not only did Mr. Talbert fail to allege a particular policy, custom, or practice of Defendant MHM which was responsible for the deprivation of his rights, the record itself fails to reveal one. On the contrary, Mr. Talbert claims that the three co-defendant social workers went against MHM policy when they denied him counseling. For example, Mr. Talbert alleges that these individual defendants each told him that they were only permitted to give a prisoner medication and no one-on-one counseling, which he characterized as lies and "not policy." See Compl. ¶ 433. Mr. Talbert also claimed that he had asked the social workers if he could get counseling to express himself instead of

10

medication, and all three denied that request, which "went against [their] own policy." Id. at ¶ 436.  Consequently, Mr. Talbert's own words substantiate that Defendant MHM had no policy, custom, or practice which resulted in a deprivation of his federal rights, but it was the individual co-defendants who allegedly did not conform to Defendant MHM's policy.

Finally, there is nothing in the record to suggest that there was any indifference to Mr. Talbert's needs.  Each time he requested to see a social worker, even when he repeatedly lied about being suicidal, he was promptly seen and his needs were addressed.  The one visit in the record where he emphatically expressed a desire to kill himself, he was kept for further evaluation by the social workers and was voluntarily committed to Pennsylvania Health Services Wing at the prison for his own safety and treatment.  Further, though he complained about MHM's emphasis on medicating him rather than offering counseling, the record shows that he was constantly non-compliant with his psychiatric medications.

After a careful review of this record, I must find that: (1) Defendant MHM's decision not to provide one-on-one counseling to Mr. Talbert does not rise to the deliberate indifference required to support a § 1983 claim for violation of Mr. Talbert's constitutional rights; and (2) there is no genuine dispute as to any material fact.  Accordingly, I will grant Defendant MHM's motion for summary judgment in its entirety.

An appropriate Order follows.